# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**MELVIN JEROME MURRY et al**　　　　　　　　　　　　　　　　**PLAINTIFFS**

**V.**　　　　　　　　　　　　　　　　　　　　　　　　　**CASE NO. 4:05CV174**

**COLDWELL BANKER REAL ESTATE CORP. et al**　　　　　　　　**DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the Court on separate motions by defendant Equifirst Corporation against each plaintiff to compel arbitration [19-1; 21-1; 23-1; 25-1; 27-1; and 29-1] and on motions by defendant State Bank & Trust to compel arbitration of those claims brought by plaintiff Robert Miller [44-1]. The Court has reviewed the briefs and exhibits and is prepared to rule on these motions. Additionally, the Court notes that there are a number of other motions pending in this case which may be impacted by the Court's ruling on the arbitration issues. The Court will address those motions as well where necessary.

The plaintiffs are Melvin Jerome Murry, Tommy Scales, Robert and Earnestine Miller, Moonyea Ousley, Lillie Swims, and Tramell and Ruthie Streeter, all of whom are residents of Leflore County, Mississippi. The defendants are several corporations and individuals alleged to have collectively engaged in a pattern of "racketeering activity" and to have violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq* ("the RICO statute" or simply "RICO"). For purposes of ruling on the instant motions, the relevant defendants are State Bank & Trust Company ("State Bank") and Equifirst Corporation ("Equifirst"). Jurisdiction is premised on the federal questions purportedly raised by the RICO claims under 28 U.S.C. § 1331, and the plaintiffs also claim supplemental jurisdiction on several pendent state law claims pursuant to 28

U.S.C. § 1367(b).

On September 21, 2005, Equifirst filed motions to compel arbitration against each of the plaintiffs. Later, on October 19, 2005, State Bank filed a motion to compel arbitration against Robert Miller. It is undisputed that each of the plaintiffs executed a separate written arbitration agreement in connection with the various Notes, Deeds of Trust and other loan documents which lie at the heart of this case. None of the plaintiffs assert that he or she is functionally illiterate or was induced to sign the arbitration agreement through deliberate misrepresentation by Equifirst. See American Heritage Life Ins. Co. v. Lang, 321 F.3d 533 (5th Cir. 2003)(holding that factual disputes precluded grant of motion to compel arbitration where illiterate plaintiff claimed to have been tricked into signing arbitration agreements without valid consent).

Congress provided in the Federal Arbitration Act ("FAA") that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999). Section Four of the FAA specifically contemplates that parties aggrieved by another party's failure to arbitrate under a written contract may file a petition in a United States District Court to compel that party to arbitrate their claims. 9 U.S.C. § 4 (1999). In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1983); Mouton v. Metropolitan Life Ins. Co., 147 F.3d 453, 456 (5th Cir. 1998).

The Fifth Circuit has directed courts to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. R.M. Perez & Assocs., Inc. v. Welch, et al., 960

F.2d 534, 538 (5th Cir. 1992). First, the court must determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996). The plaintiffs do not challenge the fact that both of these considerations weigh in favor of arbitration.

Once the court finds that the parties agreed to arbitrate, it must then consider whether any federal statute or policy renders the claims nonarbitrable. Perez, 960 F2d. at 538. In conjunction with this inquiry, a party seeking to avoid arbitration must allege and prove either that the arbitration provision itself was a product of fraud or coercion or that another ground exists at law or equity that would allow the parties' contract or agreement to be revoked. Sam Reisfeld & Son Import Co. v. S.A. Eteco, et al., 530 F.2d 679, 680-81 (5th Cir. 1976). The entirety of the plaintiffs' arguments against arbitration turn on questions of fraud and on public policy considerations.

A party must challenge the " 'making' of the agreement to arbitrate" itself to create a jury question, while allegations regarding the contract as a whole must go to arbitration. Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 n.9 (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967)). See also Haynsworth v. The Corporation, 121 F.3d 956, 963 (5th Cir. 1997)(holding that arbitration clauses are not rendered unenforceable by allegations of fraud unless inclusion of arbitration clause itself was product of fraud or coercion).

In their collective response to Equifirst's motions to compel, the plaintiffs begin with a lengthy diatribe expounding on the purported evils of arbitration, which they contend violate their constitutional rights to trial through the courts, as well as violative public policy by preventing the

creation of a body of law in areas governed by arbitration clauses. However, in light of the Supreme Court and Fifth Circuit precedents cited above, the Court declines the plaintiffs' invitation to strike down the FAA as unconstitutional. The right to a jury trial is not absolute and can be waived, as the plaintiffs did here by signing the arbitration agreements. Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 711 (5th Cir. 2002)("The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum").

The plaintiffs also suggest that the arbitration agreements are unenforceable because various defendants engaged in fraudulent conduct over the course of their business dealings with the plaintiffs, conduct which the plaintiffs argue is attributable to Equifirst. The plaintiffs concede that they did sign the arbitration agreements, but argue that Equifirst only sought to bind them with an arbitration agreement because it feared exposure of its alleged fraudulent activity in a judicial forum. Accepting this conspiracy theory as true, the simple fact remains that the plaintiffs *did sign the arbitration agreements*, and there is no meaningful evidence that they were induced to sign the agreements themselves through fraud or coercion, or at least no fraud or coercion which could not have been dispelled simply be reading the documents in question. As Equifirst has noted, "[i]t is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it." Terminix International, Inc.v. Rice, 904 So.2d 1051, 1056 (Miss 2004). Also, as noted above, only a dispute over the making of the arbitration agreement itself can manufacture a jury question, while disputes of the contract in toto (which appears to be the dispute here) is a question for the arbitrator.

The plaintiffs also suggest that the arbitration clauses were procedurally and substantively unconscionable. Indicia of procedural unconscionability include lack of knowledge and/or

4

voluntariness, inconspicuous print, the use of complex or legalistic language, disparity in sophistication or bargaining power and/or a lack of opportunity to study the contract and ask questions. East Ford, Inc. v. Taylor, 826 So.2d 709, 714 (Miss. 2002). Except for claims regarding the plaintiffs' relative sophistication, none of these indicators is present in the case at bar. The arbitration agreement plainly and clearly explained the rights that the plaintiffs would be surrendering by signing, and there is no evidence before the Court that the plaintiffs were denied opportunity to study the agreement, to seek advice regarding the agreement or even that signing the agreement was a prerequisite to obtaining the loan. Substantive unconscionability, on the other hand, requires the plaintiff to show that the terms of the arbitration agreement, freely entered into, are oppressive. Taylor, 826 So.2d at 714 (identifying waiver of choice of forum and waiver of certain remedies clauses as contract terms held to have been unconscionable). The plaintiffs have come forward with no such evidence other than conclusory allegations that the arbitration process is hopelessly biased against plaintiffs and that they have no possibility of recovery in an arbitral setting. Such unsupported allegations are not sufficient to demonstrate substantive unconscionability.

On December 2, 2005, the plaintiffs filed a supplemental response (and a motion to permit same [63-1]) apprizing the Court of the fact that certain individuals allegedly involved in inducing the plaintiffs to sign the loan agreements at the heart of this dispute have been charged with federal crimes pertaining to mortgage loan fraud. Based on that, the plaintiffs reiterate their position that Equifirst's goal in securing plaintiffs' signatures on the arbitration agreements was to conceal its involvement in an alleged criminal enterprise. The motion for leave to file the supplemental brief is GRANTED for purposes of completing the record, but the information contained in the

5

supplemental brief does not alter the outcome of the Court's ruling on the arbitration question. No matter what fraudulent conduct individuals engaged in over the course of their entire dealings with the plaintiffs, absent proof that said individuals fraudulently induced the plaintiffs to sign *the arbitration agreement itself*, such alleged fraud is still an issue for the arbitrator. For purposes of determining whether the arbitration agreements are valid, Equifirst's motives in securing the agreements are irrelevant so long as they did not secure the agreements in an improper manner.

In addition to its arguments against the motions to compel arbitration, the plaintiffs also ask the Court to stay ruling on the motions pending the taking of 30(b)(6) depositions and other discovery from representatives of the National Arbitration Forum ("NAF") on the issue of the impartiality of arbitration as a forum for resolution of their claims. It appears to the Court that the plaintiffs' arguments on this point are foreclosed by the Supreme Court's holding in Gilmer v. Interstate/Johnson Lane Corp., where the Court held that "challenges to the adequacy of arbitration procedures are insufficient to preclude arbitration" and that the Court would not "indulge [the plaintiff's] speculation that the parties or the arbitral body will not retain competent, conscientious, and impartial arbitrators . . . ." 500 U.S. 20, 30-31, 111 S.Ct. 1647, 1654-55, 114 L.Ed.2d 26 (1991)(citations omitted). Accordingly, the plaintiffs' motion to stay [83-1] is DENIED, and Equifirst's motions to compel arbitration [19-1; 21-1; 23-1; 25-1; 27-1; and 29-1] are GRANTED.

Also before the Court are (1) a separate motion by State Bank to compel arbitration of the claims of Robert Miller [44-1]; (2) a motion by the plaintiffs to stay State Bank's motion to compel on the same grounds as the Equifirst motion to stay discussed above [80-1]; and (3) a motion by the plaintiffs to file an out-of-time response to State Bank's motion to compel [86-1]. The motion for leave to file an out-of-time response is GRANTED. However, even taking the plaintiffs' out-of-time

response into account, their arguments against State Bank's motion to compel are essentially identical to those raised in response to the Equifirst motions which the Court has previously rejected. Accordingly, State Bank's motion to compel arbitration is GRANTED and the plaintiffs' motion to stay is DENIED.

Two final matters are before the Court. In support of their argument (rejected by the Court) that the arbitral forum is per se biased against them, the plaintiffs seek to subpoena and depose employees and arbitrators associated with the NAF, as well as the American Arbitration Association ("AAA") regarding alleged bias of arbitrators in favor of lenders. Equifirst and State Bank have filed a motion for protective order [91-1] and a motion to quash [93-1], respectively. The Court finds that these motions are well-taken and should be GRANTED.

A separate order summarizing this opinion shall issue this day.

This is the 7th day of June, 2006.

                                         **/s/ Michael P. Mills**
                                         **UNITED STATES DISTRICT JUDGE**